# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

NORTHERN TRUST COMPANY, as
Guardian of Darrell Thornton, a minor,

    Plaintiff,

        v.

UNITED PARCEL SERVICE, *et al.*,

    Defendants.

No. 04 C 6309
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Northern Trust Company ("Northern Trust" or "Plaintiff") brings this multi-count complaint against the United Parcel Service ("UPS" or "Defendant") and numerous other parties. Currently before me is Defendant's motion for summary judgment on Counts I, II, IX, and X. For the reasons outlined below, Defendant's motion is granted in part.

**I.    BACKGROUND**

Alicia Thornton, who initially filed this lawsuit,[1] was an employee of UPS in April, 2004. During her employment, Ms. Thornton received a basketball kit from UPS. Ms. Thornton claims that she received the item as a result of her good safety practices at work, whereas UPS contends that it was merely a gift. Either way, Ms. Thornton did not remit any monetary payment in exchange for the item, nor did UPS reap any financial benefit from this product.

UPS did not manufacture the basketball kit. UPS purchased the item from Corporate Express Promotional Marketing, Inc. (another defendant in this case). Corporate Express

---

[1] On October 23, 2007, I granted Ms. Thornton's motion to substitute Northern Trust as guardian of the estate of minor and for leave to amend the case caption on its face

Promotional Marketing, Inc. purchased the item from another defendant in this matter, Hit Promotional Products, Inc. That defendant bought the item from yet another defendant, Hip Shing Co.[2]

On April 6, 2004, Ms. Thornton's eighteen month old son, Darrell, was injured while playing with the item. A piece of the backboard broke off and entered his eye. It is that injury that forms the basis of this suit.

## II. DISCUSSION

   *A.   Summary Judgment Standard*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether any genuine issue of material fact exists, all facts must be construed in the light most favorable to the non-moving party and all reasonable and justifiable inferences drawn in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A material fact is genuinely in dispute when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

   *B.   Products Liability*

In Count I, Plaintiff seeks to recover from UPS on a theory of strict liability. The Illinois Supreme Court has adopted the strict liability doctrine found in section 402A of the Restatement

---

[2]There appears, from the papers, to be uncertainty as to whether Hip Shing Co. manufactured the item or whether it purchased it from still another entity in China.

(Second) of Torts. *Suvada v. White Motor Co.*, 210 N.E.2d 182 (1965) (overruled on other grounds). It says:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>     (a) the seller is engaged in the business of selling such a product, and
>     (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>     (a) the seller has exercised all possible care in the preparation and sale of his product, and
>     (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A, at 347-48 (1965).

The theory of strict liability imposes liability broadly throughout the distributive chain. As one Illinois court explained: "[i]n a products liability action, all persons in the distributive chain, including suppliers, distributors, wholesalers and retailers, are liable for injuries resulting from a defective product." *Carollo v. Al Warren Oil Co., Inc.*, 820 N.E.2d 994, 1001 (Ill. App. Ct. 2004) (*citing Hammond v. North American Asbestos Corp.*, 454 N.E.2d 210, 216 (Ill. 1983).

There are, however, limits to the breadth of the theory's reach. As the Illinois Supreme Court explained: "The plain language of the rule limits the application to a seller engaged in the business of selling the product which proved defective." *Siemen v. Alden*, 341 N.E.2d 713, 715 (Ill. 1975); *accord Daniels v. McKay Machine Co.*, 607 F.2d 771, 775 (7th Cir. 1979). In effect, this imposes two requirements Plaintiff must satisfy in order to prevail on its strict liability claim. Plaintiff must establish both: (1) that UPS *sold* the basketball kit to Ms. Thornton; and (2) that it is engaged in the business of selling basketball kits. Defendant argues that it neither sold the

3

item to Ms. Thornton, nor was it engaged in the business of selling the product that proved defective. Because I agree with UPS on both points, Plaintiff cannot maintain its strict liability claim.

1. **UPS Did Not "Sell" The Item to Ms. Thornton**

In order to be liable under the theory of strict liability at issue here, the defendant has to have *sold* the allegedly defective item. UPS did not sell the basketball kit to Ms. Thornton. It is clear that Ms. Thornton did not remit a financial payment in exchange for the item. In fact, in response to Defendant's Statement of Material Facts, Plaintiff states "Alicia Thornton did not provide a monetary amount in exchange for the basketball kit." In addition, at several points in her deposition, Ms. Thornton refers to the item as a "gift" and as a "prize." Both of these terms undermine the notion that UPS sold her the item. In support of its contention that UPS sold the basketball kit, though, Plaintiff argues that Ms. Thornton received the item "as compensation for safety practices in the workplace." Plaintiff seems to be asserting that Ms. Thornton and UPS engaged in a commercial transaction wherein UPS tendered the basketball kit in direct exchange for Ms. Thornton's good safety practices.

UPS claims that Ms. Thornton's safety practices had nothing to do with its decision to give her the item, and that the company just gave her the gift. Even accepting Ms. Thornton's version—as I must at this stage—I am nevertheless convinced that no reasonable juror could find that UPS "sold" the basketball kit to Ms. Thornton. This is quite simply not the kind of transactional arrangement the authors of the restatement had in mind when they drafted § 402A. Accordingly, summary judgment is proper on Plaintiff's products liability claim. However,

regardless of whether UPS sold this kit to Ms. Thornton, I also conclude that UPS was not engaged in the regular business of selling basketball kits.

## 2. UPS Was Not in the Business of Selling Basketball Kits

The second limitation set forth in the language § 402A is that the seller has to be engaged in the business of selling the allegedly defective product. This limitation is explained further in Comment *f*, which states that:

> The rule does not, however, apply to the occasional seller of food or other such products who is not engaged in that activity as a part of his business. Thus it does not apply to the housewife who, on one occasion, sells to her neighbor a jar of jam or a pound of sugar. Nor does it apply to the owner of an automobile who, on one occasion, sells it to his neighbor, or even sells it to a dealer in used cars, and this even though he is fully aware that the dealer plans to resell it.

Restatement (Second) of Torts § 402A, Explanatory Notes, Comment f at 350-51 (1965).

Even if I were to conclude that UPS sold the basketball kit to Ms. Thornton, I would nevertheless deem Defendant to be an "occasional seller," not engaged in the business of selling basketball kits, and thus outside the ambit of § 402A.

There is nothing in any of the papers submitted by either party to suggest that UPS is in the business of, or generates a profit from, the manufacture, distribution, or sale of basketball kits. As one Illinois court explained:

> [t]he public policy rationale which justifies imposing strict liability on manufacturers as well as sellers, suppliers, wholesalers, distributors, and even lessors, is based on the fact that these entities, as part of the chain of distribution, are involved in and reap a profit from the placement of the allegedly defective product into the stream of commerce.

*Bittler v. White and Co., Inc.*, 560 N.E.2d 979, 981 (Ill. App. Ct. 1990). Because UPS neither sought nor received any pecuniary benefits from the basketball kits in question, it would be

inconsistent with the theoretical underpinnings of the doctrine of strict liability to impose liability upon UPS here. The parties engage in a minor tussle over the extent to which UPS hands out items like the one at issue here. The resolution of that question is ultimately immaterial. Regardless of whether the basketball kit Ms. Thornton received was the only one UPS ever handed out or if UPS provides them to its employees on a regular basis, the company is simply not "engaged in the business of selling" basketball kits. *Siemen*, 341 N.E.2d at 715.

In sum, UPS (1) did not sell the item to Ms. Thornton; and (2) was not engaged in the business of selling basketball kits. Accordingly, Plaintiff cannot sustain a claim against UPS under a theory of strict liability. UPS's motion for summary judgment on Count I is granted.

C.   *Negligence*

In Count II, Plaintiff seeks to hold UPS liable on a theory of negligence. Under Illinois law, product liability actions asserting negligence-based claims are assessed within the framework of common law negligence. *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263 (Ill. 2007) (*citing Flaugher v. Sears, Roebuck & Co.*, 378 N.E.2d 337 (Ill. 1978)). Accordingly, in order to prevail, Plaintiff must establish "the existence of a duty of care owed by [UPS], a breach of that duty, an injury that was proximately caused by that breach, and damages. *Id.* (*citing Ward v. K mart Corp.*, 554 N.E.2d 223 (Ill. 1990)). Whereas in a strict liability claim, all of the attention is focused on the condition of the product, in a negligence claim, a defendant's fault is also at issue. *Id.*

Plaintiff fails to establish that UPS owed any duty to Ms. Thornton. As noted, the parties disagree as to whether Ms. Thornton's receipt of the basketball kit was, strictly speaking, a "gift," or whether she received it in consideration for her safety practices. Even assuming that

6

Plaintiff's version is correct—as I must here—there is no indication that this imposes any duty upon UPS.

Clearly there are some circumstances in which a seller has a duty to warn a buyer. A seller has a duty to warn a buyer if (1) the product has dangerous propensities, (2) the seller has greater knowledge than the buyer of the risk of harm from those propensities, and (3) the seller knows, or should know, that unless the seller warns the buyer of that risk, the buyer will suffer harm. *Sollami v. Eaton*, 772 N.E.2d 214, 219 (Ill. 2002); *Woodill v. Parke Davis & Co.*, 402 N.E.2d 194, 196 (Ill. 1980). However as outlined above, I have already concluded that UPS did not "sell" the basketball kit to Ms. Thornton. Accordingly, I regard the authority regarding a seller's duty to warn a buyer as inapposite.

The parties cite to no case—nor have I been able to uncover one—where a court has imposed a duty to warn on an entity that provides a product in a situation like this one. As one Illinois court noted, "the duty to warn exists where there is unequal knowledge, actual or constructive, and the defendant, possessed of such knowledge, knows or should know that harm might or could occur." *Kirkman v. Kirkman*, 552 N.E.2d 282, 284 (Ill. App. Ct. 1990). UPS neither manufactured the basketball kit nor derived a profit from the sale thereof. Accordingly, it was not in position to have superior knowledge regarding potential hazards. I am unwilling to accept the proposition that UPS possessed superior knowledge regarding the possibility that a piece of plastic from the basketball kit could break off and injure a user. Thus, I decline to impose a duty to warn on UPS here.

Absent a duty on the part of UPS, Plaintiff cannot recover on its negligence claim. *See Davlan v. Otis Elevator Co.*, 816 F.2d 287 (7th Cir. 1987) ("For a defendant to be liable for the

tort of negligence [in Illinois], he must have had a duty towards plaintiff . . . ." (*citing Illinois Housing Development Authority v. Sjostrom & Sons, Inc.*, 433 N.E.2d 1350, 1359 (Ill. App. Ct. 1982)). Defendant's motion for summary judgment on Count II is granted.

    D.    *Counts IX and X*

In Counts IX and X, Plaintiff seeks recovery under the Illinois Family Expense Act, 750 ILL. COMP. STAT. 665/15. While the disposition of these counts appears to be related to the products liability and negligence claims outlined in Counts I and II, neither party addresses these counts in their papers. I am unwilling to issue a ruling on a wholly un-briefed motion for summary judgment. UPS's motion for summary judgment on Counts IX and X is entered and continued pending supplemental briefing.

### III. CONCLUSION

For the aforementioned reasons, Defendant's motion for summary judgment on Counts I and II is GRANTED. Its motion on Counts IX and X is ENTERED AND CONTINUED.

                                    ENTER:

                                    */s/ James B. Zagel*
                                    James B. Zagel
                                    United States District Judge

DATE: November 13, 2007